# EXHIBIT A

Approved, SCAO

| | Original - Court<br>1st copy - Defendant | 2nd copy - Plaintiff<br>3rd copy - Return |

**STATE OF MICHIGAN**

2nd **JUDICIAL DISTRICT**

Berrien **JUDICIAL CIRCUIT COUNTY**

**SUMMONS**

**CASE NUMBER**

26 | 2026 0 9 6 -CB

**Court address**
Berrien County Courthouse. 811 Port St. St. Joseph MI 49085

Court telephone number
(269) 983-7111

Plaintiff's name, address, and telephone number
PER III, LLC, a Michigan limited liability company, d/b/a
TRAPSTARS OUTLET,

v

Defendant's name, address, and telephone number
TOWNSHIP OF NEW BUFFALO, a Michigan municipal
corporation

Plaintiff's attorney bar number, address, and telephone number
J. Adam Behrendt (P58607)
201 W. Big Beaver Road, Suite 500
Troy, MI 48084 (248) 743-6000

**Instructions:** Check the items below that apply to you and provide any required information. Submit this form to the court clerk along with your complaint and, if necessary, a case inventory addendum (MC 21). The summons section will be completed by the court clerk.

**Domestic Relations Case**

☐ There are no pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.

☐ There is one or more pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint. I have separately filed a completed confidential case inventory (MC 21) listing those cases.

☐ It is unknown if there are pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.

**Civil Case**

☑ This is a business case in which all or part of the action includes a business or commercial dispute under MCL 600.8035.

☐ MDHHS and a contracted health plan may have a right to recover expenses in this case. I certify that notice and a copy of the complaint will be provided to MDHHS and (if applicable) the contracted health plan in accordance with MCL 400.106(4).

☐ There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the complaint.

☐ A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has

been previously filed in ☐ this court, ☐ _____ Court, where

it was given case number _____ and assigned to Judge _____

The action ☐ remains ☐ is no longer  pending.

Summons section completed by court clerk.

**SUMMONS**

**NOTICE TO THE DEFENDANT:** In the name of the people of the State of Michigan you are notified:

1. You are being sued.
2. **YOU HAVE 21 DAYS** after receiving this summons and a copy of the complaint to **file a written answer with the court** and serve a copy on the other party **or take other lawful action with the court** (28 days if you were served by mail or you were served outside of Michigan).
3. If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.
4. If you require accommodations to use the court because of a disability or if you require a foreign language interpreter to help you fully participate in court proceedings, please contact the court immediately to make arrangements.

| Issue date<br>3/18/26 | Expiration date*<br>6/17/26 | Court clerk | **STACY LOAR-PORTER** |

*This summons is invalid unless served on or before its expiration date. This document must be sealed by the seal of the court.

MC 01  (3/23)  **SUMMONS**

MCR 1.109(D), MCR 2.102(B), MCR 2.103, MCR 2.104, MCR

## DUPLICATE ORIGINAL

### STATE OF MICHIGAN
### IN THE CIRCUIT COURT FOR THE COUNTY OF BERRIEN

PER III. LLC. a Michigan limited liability
company, d/b/a TRAPSTARS OUTLET,

  Plaintiff.

v.

TOWNSHIP OF NEW BUFFALO,
a Michigan municipal corporation.

  Defendant.

Case No. 26-026- 0 0 9 6 -CB

Hon.  **DONNA B. HOWARD**

**COMPLAINT**

**This case involves a business or
commercial dispute under MCL 600.8031
and is to be designated a Business Court
case in accordance with MCR 2.112(O).**

BODMAN PLC
J. Adam Behrendt (P58607)
Sinéad G. Redmond (P85718)
201 W. Big Beaver Road. Suite 500
Troy. MI 48084
(248) 743-6000
abehrendt@bodmanlaw.com
sredmond@bodmanlaw.com
*Attorneys for Plaintiff*

**There is no other civil action between these parties arising out
of the same transactions as alleged in this complaint pending in
this court, nor has any such action been previously filed and
dismissed or transferred after having been assigned to a judge.**

4898-9517-3526 3

## STATE OF MICHIGAN
## IN THE CIRCUIT COURT FOR THE COUNTY OF BERRIEN

PER III, LLC, a Michigan limited liability company, d/b/a TRAPSTARS OUTLET,

      Plaintiff,

v.

TOWNSHIP OF NEW BUFFALO, a Michigan municipal corporation,

      Defendant.

Case No. 2026-      -CB

Hon.

**COMPLAINT**

**This case involves a business or commercial dispute under MCL 600.8031 and is to be designated a Business Court case in accordance with MCR 2.112(O).**

BODMAN PLC
J. Adam Behrendt (P58607)
Sinéad G. Redmond (P85718)
201 W. Big Beaver Road, Suite 500
Troy, MI 48084
(248) 743-6000
abehrendt@bodmanlaw.com
sredmond@bodmanlaw.com
*Attorneys for Plaintiff*

**There is no other civil action between these parties arising out of the same transactions as alleged in this complaint pending in this court, nor has any such action been previously filed and dismissed or transferred after having been assigned to a judge.**

4898-9517-3526_3

## COMPLAINT

Plaintiff PER III, LLC, d/b/a Trapstars Outlet ("Trap Stars") complains against defendant Township of New Buffalo ("Township") as follows:

## INTRODUCTION

1.     Plaintiff Trap Stars operates an adult-use recreational marihuana establishment in the Township.

2.     This case challenges two Township actions adopted on February 17, 2026: (1) Ordinance No. 20260217 ("Reporting Ordinance"), which imposes a mandatory reporting requirement and an automatic outdoor-assembly disqualification tied to Cannabis Regulatory Agency ("CRA") complaints; and (2) the Township's Policy Governing Revocation of Special Use Permits for marihuana establishments ("Revocation Policy"), which purports to allow the Township to revoke lawfully granted special use permits based on unadjudicated CRA complaints.

3.     The Reporting Ordinance and the Revocation Policy are unlawful for various reasons, as set forth below, and their implementation will cause irreparable harm to Trap Stars' lawful business operations.

## PARTIES, JURISDICTION AND VENUE

4.     Plaintiff Trap Stars is a Michigan limited liability company doing business in the Township of New Buffalo, Michigan.

5.     Defendant Township is a Michigan municipal corporation located in Berrien County, Michigan.

6.     Jurisdiction in this Court is proper under MCL 600.601 and MCL 600.605.

7.     Venue is proper under MCL 600.1615 because the parties are located and/or conduct business within Berrien County, Michigan, and the events giving rise to this cause of action occurred in Berrien County, Michigan.

8.     The amount in controversy exceeds $25,000, exclusive of interest, costs, and attorneys' fees.

## GENERAL ALLEGATIONS

### *Michigan Regulation Taxation of Marihuana Act*

9.     In 2018, Michigan voters approved Proposal 1 to legalize, regulate and tax marihuana in the state.

10.     In December 2018, the Michigan Legislature passed the Michigan Regulation and Taxation of Marihuana Act ("MRTMA"), creating a regulatory framework to license and regulate the growth, processing, and retail sale of recreational and adult-use marihuana. MCL 333.27951, *et seq*.

11.     The stated purpose of MRTMA set forth in MCL 333.27952 is broad:

> The purpose of this act is to make marihuana legal under state and local law for adults 21 years of age or older, to make industrial hemp legal under state and local law, and to control the commercial production and distribution of marihuana under a system that licenses, regulates, and taxes the businesses involved. The intent is to prevent arrest and penalty for personal possession and cultivation of marihuana by adults 21 years of age or older; remove the commercial production and distribution of marihuana from the illicit market; prevent revenue generated from commerce in marihuana from going to criminal enterprises or gangs; prevent the distribution of marihuana to persons under 21 years of age; prevent the diversion of marihuana to illicit markets; ensure the safety of marihuana and marihuana-infused products; and ensure security of marihuana establishments. To the fullest extent possible, this act shall be interpreted in accordance with the purpose and intent set forth in this section.

12.     In other words, the Legislature intended for MRTMA to regulate virtually every aspect of marihuana commerce in Michigan.

1

13.    Under MRTMA, the Cannabis Regulatory Agency ("CRA") is granted authority to investigate, prosecute, and impose discipline for violations of state marihuana law and administrative rules.

14.    MRTMA specifically addresses the role of municipalities in regulating marihuana businesses. MCL 333.27956.

15.    A municipality may enact "other ordinances that are not unreasonably impracticable and do not conflict with this act or with any rule promulgated pursuant to this act." MCL 333.27956(2).

16.    Specifically, a municipality may regulate the following subject matter areas:

(a) establish reasonable restrictions on public signs related to marihuana establishments;
(b) regulate the time, place, and manner of operation of marihuana establishments and of the production, manufacture, sale, or display of marihuana accessories;
(c) authorize the sale of marihuana for consumption in designated areas that are not accessible to persons under 21 years of age, or at special events in limited areas and for a limited time; and
(d) designate a violation of the ordinance and provide for a penalty for that violation by a marihuana establishment, provided that such violation is a civil infraction and such penalty is a civil fine of not more than $500. MCL 333.27956(2).

17.    A municipality may establish its own municipal licensing scheme, but "may not impose qualifications for licensure that conflict with this act or rules promulgated by the department." MCL 333.27956(3).

18.    Regulations adopted to implement MRTMA provide that a license may be suspended or revoked when "[a] person, applicant, or licensee [is] *found in violation* of the acts or these rules" Mich Admin Code 420.806 (emphasis added).

19.    Thus, while municipalities may authorize or prohibit marihuana establishments and adopt reasonable zoning and time, place, and manner regulations, MRTMA does not authorize

2

4898-9517-3526_3

municipalities to impose local penalties that conflict with, supplement, duplicate, or second-guess state licensing and disciplinary determinations.

### *The Michigan Zoning Enabling Act*

20.     The Michigan Zoning Enabling Act ("MZEA"), MCL 125.3201 *et seq.*, authorizes a legislative body of a local unit of government to provide by ordinance the manner in which regulation and boundaries of districts or zones shall be determined.

21.     The MZEA states that "[a] local unit of government may ***provide by zoning ordinance*** for the regulation of land development..." MCL 125.3201 (emphasis added).

22.     The MZEA requires a legislative body to conduct a public hearing before the adoption of a zoning ordinance or any amendment to it. MCL 125.3401.

23.     The MZEA also requires newspaper publication of advance notice of the public hearing before adoption of a zoning ordinance or amendment. MCL 125.3403.

24.     The MZEA allows a municipality to "provide in a zoning ordinance for special land uses in a zoning district." MCL 125.3502(1).

25.     A special land use zoning ordinance must specify:

> (a) The special land uses and activities eligible for approval and the body or official responsible for reviewing and granting approval.
> (b) The requirements and standards for approving a request for a special land use.
> (c) The procedures and supporting materials required for the application, review, and approval of a special land use. MCL 125.3502(2).

26.     The ordinance must also set forth the regulations and standards upon which approval of special land use applications must be based. MCL 125.3504.

27.     "The body or official designated to review and approve special land uses may deny, approve, or approve with conditions a request for special land use approval" and must set forth its decision and conditions imposed on the special land use in a written statement. MCL 125.3502(2).

3

28.    The MZEA requires that conditions imposed with respect to a SLU must be unchanged "except upon the mutual consent of the approving authority and the landowner." MCL 125.3504(5).

29.    The MZEA does not set forth a process for revoking a special land use permission.

### *The Township's Marihuana Licensing Ordinances*

30.    On April 17, 2023, the Township approved several ordinances and policies regulating marihuana licensing and zoning. **Exhibit A**, April 17, 2023 Meeting Minutes.

31.    The Township's Marihuana Ordinance Amendment and Marihuana Overlay Map established locations in the Township where marihuana retail businesses are a permitted use. **Exhibit B**, Overlay Map, **Exhibit C**, Zoning Ordinance Amendment.

32.    The Marihuana Regulatory Ordinance established a licensing scheme, including a requirement that each adult-use marihuana establishment obtain a special land use permit ("SLU"). **Exhibit D**, Regulatory Ordinance.

33.    The Marihuana Regulatory Ordinance did not cap the amount of adult-use marihuana establishments in the Township.

34.    Following the passage of the Regulatory Ordinance, various adult-use marihuana establishments applied for SLUs and began conducting business in the Township.

35.    The Regulatory Ordinance provides that "any special use permit granted for a medical marihuana facility or an adult-use establishment is unique and specific to the applicant and does not run with the land." 455-5.22Q(1).

36.    The Regulatory Ordinance further provides that, "[i]f at any time an establishment or facility violates the Zoning Ordinance, any condition imposed through a special use permit, or any other applicable Township ordinance or state law or regulation, the Township may take any or all of the following actions:

4

(a) The Township may request that LARA revoke or refrain from renewing the facility or establishment's state operating license.

(b) Following notice and a public hearing, the Township may revoke the facility or establishment's special use permit.

(c) The Township may treat the violation as a municipal civil infraction, for which each day the violation continues will be a separate offense, and impose the following fines...455-5.22R(1)

37. Section 455-5.22R(1), by its terms, applies only when there is a violation of the Zoning Ordinance, SLU conditions, or other laws.

38. It does not provide a mechanism for punishing an establishment against whom a complaint has been filed but not yet adjudicated.

39. On January 21, 2025, the Township passed an ordinance "to prohibit new Medical Marijuana Facilities and Adult-Use Marijuana Establishments" ("2025 Ordinance").

40. The 2025 Ordinance provided the Township would no longer grant licenses to cannabis businesses in the Township.

41. Businesses already holding a SLU from the Township when the 2025 Ordinance was passed were exempt and could continue to lawfully operate in the Township.

42. Trap Stars is among the businesses exempt from the 2025 Ordinance.

43. In 2026, the Township continued its efforts to limit marihuana businesses in the Township.

44. At a January 27, 2026 Township meeting, the County Sheriff led a conversation about marihuana businesses in the Township, with many residents stating their belief that the industry is having a negative impact on the Township.

5

4898-9517-3526_3

*The Reporting Ordinance*

45.    On February 17, 2026, the Township purported to adopt Ordinance No. 20260217, amending Chapter 257 of the Township Code ("Reporting Ordinance"). **Exhibit E**.

46.    The Reporting Ordinance requires any marihuana establishment that becomes the subject of a formal administrative complaint or disciplinary action by LARA/CRA to notify the Township within three business days and to provide copies of state enforcement materials.

47.    The Reporting Ordinance further provides that any marijuana establishment subject to a LARA/CRA disciplinary action is automatically ineligible for an outdoor assembly license for twelve (12) months following state discipline, regardless of the nature, severity, or relevance of the alleged violation.

48.    The Reporting Ordinance imposes this disqualification automatically, without any independent Township findings, and without requiring a predicate municipal violation.

49.    The Township claims the Reporting Ordinance took effect immediately.

50.    Under MCL 41.184(2)(a), an ordinance that imposes a sanction for the violation of the ordinance may not take effect until 30 days after first publication.

51.    The Reporting Ordinance imposes a mandatory and automatic adverse consequence in the form of the loss of eligibility for an outdoor assembly license for twelve months.

52.    That automatic disqualification functions as a sanction within the meaning of MCL 41.184(2)(a).

*The Revocation Policy*

53.    Also on February 17, 2026, the Township purported to adopt a written Policy Governing Revocation of Special Use Permits for Marijuana Facilities and Establishments ("Revocation Policy"). **Exhibit F**.

6

54.   The Revocation Policy attempts to authorize the Township Board to revoke a marihuana establishment's SLU based on alleged violations of state law or CRA rules.

55.   The Revocation Policy expressly allows the Township to revoke an SLU even where the CRA is in the preliminary stages of adjudicating the same alleged conduct through the state disciplinary process.

56.   The Revocation Policy conflicts with the Township's existing mechanism for revoking an SLU.

57.   Section 455-8.8 of the Township Code already governs "expiration and revocation" of an SLU and states "The standards and procedures for expiration and revocation of an approved special land use permit shall be the same as those for site plan review in Section 455-6.9. **Exhibit G**.

58.   Section 455-6.9 provides:

> Revocation. If a violation of any of the conditions or standards imposed on an approved site plan review is found to exist following inspection, the Zoning Administrator shall notify the owner of the premises, the applicant of the site plan review, and the Township Board that such violation exists and that the site plan review approval will be revoked within 15 days of such notification. If said violation is not corrected within 15 days, the Township Board may revoke the permit. A permit may be revoked upon any violation. Furthermore, such a violation is hereby declared a violation of this chapter, subject to all the remedies and penalties provided for within this chapter.

59.   Section 455-6.9 clearly sets forth a procedure for revocation, requiring (1) inspection, (2) the Zoning Administrator to give notice that the violation exists, and (3) a 15-day cure period.

60.   The Revocation Policy is apparently intended to supplant Section 455-6.9 and to create a license revocation scheme that applies only to marihuana establishments.

61.   The Revocation Policy is retroactive to January 1, 2025.

7

4898-9517-3526_3

62.    In other words, the Revocation Policy purports to impose consequences on CRA violations that occurred in 2025—almost a year after their occurrence.

63.    The Township scheduled a hearing on March 24, 2026, purportedly under the Revocation Policy, creating immediate risk that the Township will impose land-use penalties predicated on unadjudicated CRA allegations.

64.    On March 18, 2026, the Township temporarily postponed the March 24 hearing.

65.    Although the Revocation Policy clearly concerns land use, it was not properly adopted as a zoning ordinance or amendment.

66.    As a general law township, the Township possesses only those powers expressly granted by statute. MCL 41.181 *et seq.* The Township may not impose automatic licensing penalties or land-use consequences untethered from a municipal violation, nor may it condition unrelated permits on unadjudicated state enforcement activity.

67.    The Reporting Ordinance attempts to impose automatic licensing penalties predicated on unadjudicated CRA allegations and is untethered to any municipal violation.

68.    The Revocation Policy attempts to extinguish vested land-use rights based on unadjudicated CRA allegations, effectively creating a parallel disciplinary regime and subjecting adult-use marihuana establishments in the Township to duplicative, overlapping enforcement consequences.

69.    Both the Reporting Ordinance and Revocation Policy are a significant overreach of the Township's limited powers under the U.S. and Michigan Constitutions, the General Township Act, MRTMA, the MZEA.

### *Trap Stars*

70.    Trap Stars operates an adult-use marihuana establishment at 13964 Grand Ave, New Buffalo MI 49117 (the "Property").

8

71.    Trap Stars holds all state licenses required by the CRA.

72.    Trap Stars also holds an SLU issued by the Township, allowing it to operate as an adult-use marihuana establishment at the Property.

73.    Trap Stars obtained its SLU through the Township's standard application process, which included a comprehensive review of Trap Stars' application, which included documentation that Trap Stars had applied to obtain operating licenses from the CRA, a site plan, and confirmation of zoning compliance.

74.    The SLU was approved based on the Township Board's findings that Trap Stars had met the requirements set forth in the Regulatory Ordinance.

75.    In reliance on the validity and continued effectiveness of its SLU, Trap Stars invested substantial capital in the acquisition, development, build-out, and operation of the Property, including expenditures for real property improvements, security infrastructure, inventory, and ongoing operational costs.

76.    On October 17, 2024, after review by the Township, Trap Stars obtained a certificate of occupancy for the Property, confirming that the Property satisfied applicable building, zoning, and safety requirements and was approved for its intended use.

77.    As part of its operations, Trap Stars regularly conducts outdoor events in a manner consistent with past Township practices and approvals.

78.    The Township has previously authorized such activities by issuing Trap Stars an outdoor assembly permit, further reinforcing Trap Stars' reasonable expectation that these activities were permissible and could continue so long as Trap Stars complied with applicable conditions and regulations.

79.    For example, on March 17, 2025, the Township voted to grant Trap Stars a permit for April 19 and 20, 2025 from 9:00am to 9:00pm. **Exhibit H**, Meeting Minutes.

9

4898-9517-3526_3

80.    Based on this prior approval history and the continued validity of its SLU, Trap Stars reasonably anticipates applying for an outdoor assembly permit for the same dates in April 2026, consistent with its past practice and the Township's prior approvals.

81.    On February 25, 2026, the CRA filed a formal complaint against Trap Stars. **Exhibit I**, CRA Complaint.

82.    The CRA complaint does not suspend, or revoke Trap Stars' state licenses or its SLU.

83.    Trap Stars notified the Township of the CRA complaint as required by the Reporting Ordinance.

84.    Trap Stars received notice of a public hearing scheduled under the Revocation Policy, at which the Township purports to consider revocation of Trap Stars' SLU based solely on the CRA complaint. **Exhibit J**, Notice.

85.    Together, the Township's actions subject Trap Stars to immediate and irreversible penalties based solely on pending and disputed CRA allegations, without the findings, procedures, or due process required by law.

## COUNT I:    DECLARATORY RELIEF

86.    Trap Stars incorporates all preceding paragraphs as if fully restated here.

87.    Under MCR 2.605, Trap Stars seeks to obtain a declaration of the parties' rights, status, and legal relations under the Township Code and applicable Michigan law.

88.    An actual, present, and justiciable controversy exists between Trap Stars and the Township concerning the interpretation and enforcement of the Township Code, the Reporting Ordinance, and the Revocation Policy as applied to Trap Stars.

10

89. Trap Stars is entitled to a declaration from the Court to resolve this present and ongoing controversy and to clarify the parties' respective rights and obligations under the Township Code.

90. Under MCR 2.605(D), "[t]he court may order a speedy hearing of an action for declaratory relief and may advance it on the calendar."

91. WHEREFORE, Trap Stars seeks a declaration that (1) the Reporting Ordinance and Revocation Policy are unlawful and unenforceable facially and as applied to Trap Stars; (2) the Township lacks authority to disqualify an applicant from obtaining a public assembly permit based solely on the filing of a CRA complaint; (3) the Township lacks authority to revoke or condition an SLU based solely on the filing of a CRA complaint; and (4) the Township must comply with the procedural requirements of the MZEA, MRTMA, and Township Code before taking any adverse land-use action.

## COUNT II: VIOLATION OF THE MICHIGAN ZONING ENABLING ACT

92. Trap Stars incorporates all preceding paragraphs as if fully restated here.

93. The MZEA requires a legislative body to conduct a public hearing before the adoption of a zoning ordinance or any amendment to a zoning ordinance. MCL 125.3401.

94. The MZEA also requires newspaper publication of advance notice of the public hearing before adoption of a zoning ordinance or amendment. MCL 125.3401.

95. The Revocation Policy purports to establish substantive standards, procedures, and decision-making authority for revoking previously issued SLUs.

96. Although the Revocation Policy clearly concerns land use, it was not properly adopted as a zoning ordinance or amendment.

97. The Township did not conduct a public hearing or publish advance notice of a public hearing before adoption of the Revocation Policy.

11

98.     The MZEA requires defined standards, notice, and written findings and conclusions for special land-use decisions. MCL 125.3502(2).

99.     The MZEA also requires any new conditions applicable to a duly approved SLU must be approved "upon the mutual consent of the approving authority and the landowner." MCL 125.3504(5).

100.    The Township's implementation of the Revocation Policy bypassed the statutory requirements of the MZEA by imposing automatic consequences triggered solely by the CRA filing an initial complaint.

101.    Trap Stars is at risk of immediate and irreparable harm should the Township attempt to revoke its SLU.

WHEREFORE, Trap Stars requests the Court (1) declare that the Revocation Policy is void and unenforceable because it establishes land-use standards and revocation procedures without following MZEA procedures; (2) enjoin the Township, preliminarily and permanently, from enforcing the Revocation Policy; and (3) grant all such other relief as the Court deems just and equitable.

## COUNT III:  VIOLATION OF THE MICHIGAN REGULATION AND TAXATION OF MARIHUANA ACT

102.    Trap Stars incorporates all preceding paragraphs as if fully restated here.

103.    MRTMA establishes a comprehensive, statewide regulatory framework governing the licensure, regulation, and discipline of adult-use marihuana establishments. MCL 333.27951 *et seq*.

104.    MRTMA preempts local ordinances and policies that conflict with, frustrate, or intrude upon the State's comprehensive regulatory scheme.

4898-9517-3526_3

105.    Under MRTMA, municipalities may regulate only certain aspects of marihuana commerce, including signage, and time, place, and manner restrictions. MCL 333.27956(2).

106.    A municipality's municipal licensing scheme "may not impose qualifications for licensure that conflict with this act or rules promulgated by the department." MCL 333.27956(3).

107.    The Revocation Policy expressly permits the Township to consider, and act upon, CRA enforcement activity even where the CRA has not suspended or revoked the operator's state license.

108.    The practical effect of the Revocation Policy is to allow the Township to suspend or terminate an adult-use marihuana establishment's SLU prior to the CRA completing its investigation and enforcement process.

109.    MRTMA states that a municipality's municipal licensing scheme "may not impose qualifications for licensure that conflict with this act or rules promulgated by the department." MCL 333.27956(3).

110.    Regulations adopted to implement MRTMA provide that a license may be suspended or revoked when "[a] person, applicant, or licensee [is] *found in violation* of the acts or these rules" Mich Admin Code 420.806 (emphasis added).

111.    Therefore, MRTMA only permits revocation or suspension of a license when the applicant is found in violation of MRTMA or its associated regulations.

112.    The Revocation Policy, however, allows the Township to revoke an SLU based solely on the filing of a CRA complaint, *before* any violation is actually found.

113.    Thus, the Revocation Policy exceeds the limited authority granted to municipalities under MRTMA and intrudes upon an area the Legislature reserved exclusively to the state.

WHEREFORE, Trap Stars requests the Court (1) declare that the Reporting Ordinance and Revocation Policy are preempted and/or invalid to the extent they conflict with, frustrate, or

13

intrude upon MRTMA; (2) enjoin the Township, preliminarily and permanently, from enforcing the Reporting Ordinance and Revocation Policy; and (3) grant all such other relief as the Court deems just and equitable.

## COUNT IV: VIOLATION OF THE OPEN MEETINGS ACT ("OMA")

114. Trap Stars incorporates all preceding paragraphs as if fully restated here.

115. The OMA requires that a public body conduct its meetings in a manner open to the public and with sufficient notice of such meetings. MCL 15.265.

116. For a "regular" meeting, a public body must post a notice stating the date, time, and place, and must include an opportunity for public comment. MCL 15.263.

117. The Township's February 17, 2026 meeting did not provide sufficient notice of the Township's intention to discuss, let alone approve, the Reporting Ordinance or the Revocation Policy.

118. The agenda for the February 17, 2026 meeting did not disclose the Township's intention to discuss significant changes to its marihuana licensing scheme.

119. The Township did not provide copies of the Reporting Ordinance or Revocation Policy before their adoption. When affected entities requested a copy of the Reporting Ordinance or Revocation Policy, they were told to file a FOIA request.

120. The Township did not provide a meaningful opportunity for public review or comment, thereby depriving Trap Stars and other affected entities from meaningfully participating in the legislative process.

121. The Township's clear attempts to withhold information about the Reporting Ordinance and Revocation Policy, and to exclude affected entities and the public from the legislative process, violate the spirit and text of the OMA.

14

4898-9517-3526_3

122.    Under MCL 15.270 and MCL 15.271 an action by a public body that violates the OMA may be invalidated by a circuit court.

123.    WHEREFORE, Trap Stars seeks a declaration that (1) the Reporting Ordinance and Revocation Policy are unlawful and unenforceable because they were approved in violation of the OMA; (2) costs and attorney fees as provided by MCL 15.271(4).

**COUNT V:    VIOLATION OF THE U.S. AND MICHIGAN CONSTITUTIONS
EQUAL PROTECTION CLAUSE – CLASS OF ONE DOCTRINE**

124.    Trap Stars incorporates all preceding paragraphs as if fully restated here.

125.    Amendment XIV of the United States Constitution, Section 1 states in pertinent part, "[n]o state shall make or enforce any law which shall ... deny to any person within its jurisdiction the equal protection of the laws."

126.    The Michigan Constitution provides that "[a]ll political power is inherent in the people. Government is instituted for their equal benefit, security and protection." Mich. Const. 1963, art. 1, § 1. It further guarantees that "[n]o person shall be denied the equal protection of the laws." Mich. Const. 1963, art. 1, § 2.

127.    The equal protection clauses under the U.S. and Michigan Constitutions guarantee the right to equal treatment from the government and prohibit laws and the application of laws that invidiously discriminate between similarly situated individuals.

128.    The Township, through its officials and agents, is a municipal corporation and governmental entity subject to the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and Article 1, Section 2 of the Michigan Constitution.

129.    The Township intentionally singled out adult-use marihuana establishments for differential treatment by implementing the Reporting Ordinance and the Revocation Policy.

15

130.   Other similarly situated, regulated land uses within the Township—including liquor-licensed establishments, food service establishments, and other conditional uses—are not subject to automatic penalties triggered by state regulatory complaints.

131.   Trap Stars' business is not materially different in operation or usage from other similarly situated businesses for which the Township has properly applied Section 455-6.9 without arbitrary and punitive deviations.

132.   The Township's unequal treatment does not bear any substantial relation to public health, safety, and welfare.

133.   The Township's unequal treatment of Trap Stars does not advance a governmental interest.

134.   There is no rational basis for the Township's unequal treatment of Trap Stars as compared to other similarly situated businesses in the Township.

135.   The Township's conduct constitutes a violation of Trap Stars' right to equal protection as a "class of one" under the Fourteenth Amendment to the U.S. Constitution, as enforceable through 42 U.S.C. § 1983, and Article 1, Section 2 of the Michigan Constitution.

136.   As a direct and proximate result of the Township's actions, Trap Stars has suffered and will continue to suffer economic harm, loss of business opportunities, and uncertainty in its ability to operate.

WHEREFORE, Trap Stars requests the Court (1) declare that the Township's singling out of adult-use marijuana establishments for automatic penalties tied to state enforcement activity violates the Equal Protection Clause; (2) enjoin the Township, preliminarily and permanently, from enforcing the Reporting Ordinance and Revocation Policy; and (3) award damages in excess of $25,000, together with interest, costs, and such other relief as the Court deems just and equitable.

4898-9517-3526_3

## COUNT VI:  VIOLATION OF THE US AND MICHIGAN CONSTITUTIONS PROCEDURAL DUE PROCESS

137.    Trap Stars incorporates all preceding paragraphs as if fully restated here.

138.    Amendment XIV of the United States Constitution holds, in pertinent part: "nor shall any state deprive any person of life, liberty, or property without due process of Law."

139.    The Due Process Clause of the Michigan Constitution similarly provides that "[n]o person shall ... be deprived of life, liberty or property, without due process of law." Const. 1963, art. 1, §17.

140.    The Township is a municipal corporation and governmental entity subject to the Due Process Clause of the Fourteenth Amendment to the United States Constitution and Article 1, Sections 2 and 17 of the Michigan Constitution.

141.    Trap Stars has a protected property interest in its SLU and in its eligibility for outdoor assembly permits, like those previously granted in the ordinary course.

142.    The Reporting Ordinance imposes an automatic twelve-month disqualification from outdoor assembly licensure without individualized findings, proportionality, or a meaningful opportunity for Trap Stars to contest the disqualification.

143.    That penalty is triggered by allegations alone, when the CRA complaint remains ongoing, disputed, and may ultimately be dismissed or resolved without findings of violation.

144.    The Reporting Ordinance applies regardless of severity and without any connection between the alleged conduct and outdoor assembly activities, rendering it arbitrary and disproportionate.

145.    Likewise, the Revocation Policy allows the Township to revoke an SLU based on unadjudicated CRA claims, even though the CRA complaint is ongoing, disputed, and may ultimately be dismissed or resolved without findings of violation.

146.    By adopting the Revocation Policy and scheduling a revocation hearing in the same meeting, the Township collapsed legislative, executive, and adjudicative functions into a single Board meeting, without providing Trap Stars an opportunity to be heard.

WHEREFORE, Trap Stars requests the Court (1) declare that the Township's implementation of the Reporting Ordinance and Revocation Policy violate due process; (2) enjoin the Township, preliminarily and permanently, from enforcing the Reporting Ordinance and Revocation Policy; and (3) award damages in excess of $25,000, together with interest, costs, and such other relief as the Court deems just and equitable.

## COUNT VII: ULTRA VIRES ACTION

147.    Trap Stars incorporates all preceding paragraphs as if fully restated here.

148.    As a municipal corporation, the Township possesses only those powers expressly granted or necessarily implied by statute, charter, or ordinance. Any governmental action taken without legal authority is ultra vires and void.

149.    Under MCL 41.184(2)(a), an ordinance that imposes a sanction for the violation of the ordinance may not take effect until 30 days after first publication.

150.    The Reporting Ordinance imposes a mandatory and automatic adverse consequence in the form of the loss of eligibility for an outdoor assembly license for twelve months.

151.    That automatic disqualification functions as a sanction within the meaning of MCL 41.184(2)(a).

152.    Accordingly, the Reporting Ordinance cannot lawfully take effect immediately upon publication, and any attempt to enforce its licensing disqualification provisions before the expiration of the statutory 30-day period is ultra vires and void.

153.    The MZEA does not provide a procedure for revocation of an SLU.

18

154. Instead, Section 455-8.8 of the Township Code already provides a procedure for revocation of an SLU. Section 455-8.8 requires the Township to follow the procedures set forth in Section 455-6.9.

155. Section 455-6.9 provides:

> Revocation. If a violation of any of the conditions or standards imposed on an approved site plan review is found to exist following inspection, the Zoning Administrator shall notify the owner of the premises, the applicant of the site plan review, and the Township Board that such violation exists and that the site plan review approval will be revoked within 15 days of such notification. If said violation is not corrected within 15 days, the Township Board may revoke the permit. A permit may be revoked upon any violation. Furthermore, such a violation is hereby declared a violation of this chapter, subject to all the remedies and penalties provided for within this chapter.

156. Section 455-6.9 does not grant the Township the authority to implement a policy for SLU revocation specific to cannabis facilities.

157. The Township Code does not authorize the Township to conduct a revocation hearing outside the procedures expressly set forth in Section 455-6.9.

158. Despite these clear legal limitations, the Township acted outside its authority and disregarded Section 455-6.9 by implementing the Revocation Policy.

159. The Township's conduct in imposing the Revocation Policy is ultra vires, exceeds the scope of the authority granted to the Township and its officers under the Township Code and applicable Michigan law, and, therefore, is void.

160. As a direct and proximate result of these ultra vires actions, Trap Stars will suffer substantial irreparable harm.

161. Trap Stars is entitled to declaratory, injunctive, and monetary relief to remedy the Township's ultra vires conduct.

19

4898-9517-3526_3

WHEREFORE, Trap Stars requests the Court (1) declare that the Township's adoption and threatened enforcement of the Revocation Policy and related proceedings exceed the Township's lawful authority and are ultra vires and void, (2) enjoin the Township, preliminarily and permanently, from taking any action to revoke or impair Trap Stars' SLU except as expressly authorized by duly enacted Township Code provisions and applicable Michigan law; and (3) award damages in excess of $25,000, together with interest, costs, and such other relief as the Court deems just and equitable.

**COUNT VIII:     42 USC 1983**

162.    Trap Stars incorporates all preceding paragraphs as if fully restated here.

163.    42 USC 1983 provides in pertinent part that

164.    The Township's attempt to adopt the Reporting Ordinance and Revocation Policy violated Trap Stars' right to equal protection and due process.

165.    At all times, the Township was acting under color of state law and in its official capacity.

166.    Trap Stars has been damaged in excess of $25,000, and continues to be damaged as a result of the Township's unconstitutional actions.

WHEREFORE, Trap Stars requests the Court (1) declare that the Township's adoption and threatened enforcement of the Reporting Ordinance and Revocation Policy are unconstitutional; (2) enjoin the Township, preliminarily and permanently, from taking any action to revoke or impair Trap Stars' SLU except as expressly authorized by duly enacted Township Code provisions and applicable Michigan law; (3) monetary damages for any actual injury caused by the Township's actions; (4) punitive damages against the Township for violating Trap Stars' constitutional rights; and (5) interest, costs, and such other relief as the Court deems just and equitable.

20

Respectfully submitted,

BODMAN PLC


By: /s/ J. Adam Behrendt
       J. Adam Behrendt (P58607)
       Sinéad G. Redmond (P85718)
   201 W. Big Beaver Road, Suite 500
   Troy, Michigan  48084
   248-743-6000
   abehrendt@bodmanlaw.com
   sredmond@bodmanlaw.com
   Attorneys for Plaintiff

March 18, 2026

21

4898-9517-3526_3

# EXHIBIT A

**NEW BUFFALO TOWNSHIP BOARD**
**REGULAR BOARD MEETING**
**APRIL 17th[th], 2023 4:00 P.M.**
**17425 Red Arrow Hwy. New Buffalo, MI 49117**

1. **ROLL CALL & PLEDGE OF ALLEGIANCE**

   Roll Call:  Heit, Iazzetto, Rahm, Rogers, & Zabicki
   All Present

   Pledge of Allegiance

2. **ITEMS TOO LATE FOR PRINTED AGENDA**

   Invoice to Co-alliance for $883.41 add to Consent Agenda

3. **APPROVE AGENDA**

   Iazzetto moved, Rahm supported to approve the agenda.

   Roll Call Vote:
   Heit        Yes
   Iazzetto    Yes
   Rahm        Yes
   Rogers      Yes
   Zabicki     Yes

Motion CARRIED

4. **PUBLIC COMMENT**

5. **REPORTS**

   Building
   PGCA
   Fire
   GRSDA
   Library
   LRSB
   Marina
   Park
   Pokagon Fund
   Police

**6.   CONSENT AGENDA**

Rogers moved, Rahm supported to approve;

Minutes of the March 20th, 2023 regular township board meeting and March 29th, 2023 special township board meeting
Treasurer's Report
Bills
1. General $15,776.64
2. Building $8,356.84
3. Sewer & Water $257,850.88
4. Park Millage $10,878.97
5. Public Safety Millage $337,599.47
6. LRSB Discretionary
7. Marina $4,458.61
8. Trust & Agency
9. Payroll $76,391.33

Approve marina cleaning pay increase to $50.00 per cleaning visit during the off season (twice a month) and $100.00 weekly from April 15th to October 15th.
Approve the Friends of NBTFD Fired Up 5K event on September 23rd, 2023.
Approve quote from Midwest Glass for two-way electronic communications at 2 reception windows in the amount of $4,975.00.
Approve writing a grant to the Pokagon Fund for a CPR class in the amount of $1,050.00.
Approve quote from Country Lane for painting, caulking and damage repair to outside of building at Pleasure Isle Marina in the amount of $4,425. Percentage of this to be paid by upstairs condo owner.
Approve invoice from The Edge for 2 new printers in the amount of 1,246.80.
Approve invoice from Four Winds Casino for water in the amount of $12,423.00.
Approve invoice from Co-Alliance in the amount of $883.41.

Roll Call Vote:
| | |
|---|---|
| Heit | Yes |
| Iazzetto | Yes |
| Rahm | Yes |
| Rogers | Yes |
| Zabicki | Yes |

Motion CARRIED

**7.   NEW BUSINESS**

**a.   Emergency Liaison Resolution**

Rahm resolves, Rogers supported to adopt resolution 2023-04-17 appointing Supervisor Michelle Heit as the Emergency Liaison to the Berrien County Sheriff's Office.

Roll Call Vote:
Heit          Yes

lazzetto        Yes
Rahm            Yes
Rogers          Yes
Zabicki         Yes

Motion CARRIED

**b.    Marihuana Zoning Ordinance Amendment**

Heit moved, Zabicki supported to approve the Marihuana Zoning Ordinance Amendment with the inclusion of "the south side of Holiday Drive through to Kinst Road".

Roll Call Vote:
Heit            Yes
lazzetto        Yes
Rahm            Yes
Rogers          Yes
Zabicki         Yes

Motion CARRIED

**c.    Marihuana Regulatory Ordinance**

Zabicki moved, Rahm supported to approve the Marijuana Regulatory Ordinance.

Roll Call Vote:
Heit            Yes
lazzetto        Yes
Rahm            Yes
Rogers          Yes
Zabicki         Yes

Motion CARRIED

**d.    Marihuana Overlay Map**

Heit moved, Rogers supported to approve the Marihuana Overlay Map with the inclusion of 'the south side of Holiday Drive through to Kinst Road".

Roll Call Vote:
Heit            Yes
lazzetto        Yes
Rahm            Yes
Rogers          Yes
Zabicki         Yes

Motion CARRIED

**e.    Marihuana Establishment Application Fee Resolution**

Zabicki resolved, Iazzetto supported to adopt Resolution #2023-04-17A to establish a Fee of $5,000.00 for a Yearly Marihuana Establishment Application.

Roll Call Vote:

| | |
|---|---|
| Heit | Yes |
| Iazzetto | Yes |
| Rahm | Yes |
| Rogers | Yes |
| Zabicki | Yes |

Motion CARRIED

**f.    Marihuana Application**

Heit moved, Rahm supported to approve the Marihuana Establishment Application.

Motion CARRIED

**g.    Seasonal Park Employee**

Rahm moved, Zabicki supported to approve hiring Monique Carpenter and Sam Donnelly at $15.00 per hour, and Ben Coffeen at $16.00 per hour for the seasonal park employee position upon receiving clear background checks, drug tests and physicals.

Motion CARRIED

**h.    Escrow Policy**

Zabicki moved, Iazzetto supported to approve the new escrow policy.

Motion CARRIED

**i.    Special Event Fireworks Ordinance & Application**

Iazzetto moved, Rogers supported to approve the Fireworks Special Event Ordinance and Application.

Motion CARRIED

**j.    Fireworks Permit Fee Resolution**

Zabicki resolved, Heit supported to adopt Resolution 2023-04-17b to establish a fee of $400.00 for a special event firework display permit.

Roll Call:

| | |
|---|---|
| Heit | Yes |

| | |
|---|---|
| lazzetto | Yes |
| Rahm | Yes |
| Rogers | Yes |
| Zabicki | Yes |

**k.    Election Agreement**

Heit moved, Rahm supported to authorize the Clerk Judith H. Zabicki to negotiate on behalf of the Township, an agreement with local communities and the Berrien County Clerk regarding '9 days of early voting" in upcoming elections.

Motion CARRIED

**l.    Trailhead cleaning and Maintenance**

Heit moved, Zabicki supported to approve hiring Kaitlyn Poff as a seasonal employee for cleaning and maintenance of the Union Pier Trailhead Restrooms at the rate of $100 per week.

Motion CARRIED

**m.    Lift Station Pump Rebuild**

Rogers moved, Heit supported to approve quote from Kennedy Industries for a lift station pump rebuild in the amount of $20, 765.00 for the Maudlin Road Station.

Motion CARRIED

**n.    Road Department Agreement**

lazzetto moved, Rogers supported to approve the 2023 road agreement with the Berrien County Road Department for work on Lakeshore, Glassman & Shedd Road in the amount of $253,142.00.

Motion CARRIED

**o.    Resignation**

Heit moved, Rogers supported to accept the resignation from Utility Department Assistant Nick Jackson.

Motion CARRIED

**8.    ADJOURNMENT**

Rahm moved, Rogers supported to adjourn at 4:35 p.m.

Submitted by,
Judith H. Zabicki, New Buffalo Township Clerk

# EXHIBIT B

NEW BUFFALO TOWNSHIP
MARIJUANA OVERLAY DISTRICTS (WITH ZONING)

WIGHTMAN
it's all about people

# EXHIBIT C

Case 1:26-cv-01198    ECF No. 1-1,  PageID.39    Filed 04/13/26    Page 36 of 73

# Chapter 455. Zoning

# Article 5. Supplemental Use Standards

# § 455-5.22. Marihuana businesses.

[Amended 5-23-2025 by Ord. No. 20250523A]

In addition to all requirements of Article **8** and any other requirements of this Zoning Ordinance or Township ordinances, and any conditions imposed by the Planning Commission in granting special use approval, all medical marihuana facilities and adult-use marihuana establishments must comply with the following requirements. All terms defined in the MMFLA[1] and MRTMA[2] have the same meaning when used in this section.

A.  Medical marihuana facilities must comply with the MMFLA and the MMFLA rules, as well as any other applicable state laws or regulations.

B.  Adult-use marihuana establishments must comply with MRTMA and the MRTMA rules, as well as any other applicable state laws or regulations.

C.  Equivalent licenses are permitted, if approved by the State of Michigan.

D.  Co-located facilities or establishments are permitted, subject to the following requirements:

   (1)  The co-location must be approved by the State of Michigan.

   (2)  A maximum of one of each license type may operate on a single parcel. By way of example and not limitation, this provision allows one adult-use grower and one adult-use retailer to be co-located on the same parcel, but it does not allow two adult-use retailers to be co-located on the same parcel. For purposes of this subsection, "parcel" means a parcel designated on the Township's assessment roll for property tax purposes, regardless of the number of street addresses assigned to the parcel or the number of buildings or units on the parcel.

E.  Stacked grower licenses are prohibited.

F.  Facilities and establishments shall be sufficiently screened or buffered with a fence, wall, or landscape screen to minimize light spillage, odor, and noise (including noise associated with truck traffic or other machinery), affecting adjacent properties.

G.  Special use applicants must provide a plan for the storage and disposal of marihuana or chemicals associated with marihuana cultivation, so as to minimize the risk of theft or harm resulting from chemical exposure. This plan must be included with the site plan application.

H.  No marihuana may be stored overnight outside of an enclosed building. By way of example and without limitation, it is unlawful to store marihuana overnight in an outdoor waste bin or a secure transport vehicle parked outdoors.

I.  Signage for facilities and establishments may be approved pursuant to the standards provided in § **455-4.4**, with the additional restriction that facility signage may not depict marihuana, marihuana-infused products, or marihuana-related paraphernalia.

3/10/26, 8:28 PM
Case 1:26-cv-01198 ECF No. 1-1, PageID.40 Filed 04/13/26 Page 37 of 73
Marihuana businesses. - Township of New Buffalo, MI

J.  Marihuana facilities and establishments must control and eliminate odor as follows:

(1) Any building in which marihuana is stored, processed, or located must be equipped with an activated air scrubbing and carbon filtration system for odor control to ensure that air leaving the building through an exhaust vent first passes through an activated carbon filter and air scrubbing system.

(2) The filtration system must consist of one or more fans, activated carbon filters and be capable of scrubbing the air prior to leaving any building. At a minimum, the fan(s) must be sized for cubic feet per minute (CFM) equivalent to the volume of the building (length multiplied by width multiplied by height) divided by three. The filter(s) shall be rated for the applicable CFM.

(3) The air scrubbing and filtration system must be maintained in working order and must be in use at all times. The filters must be changed per manufacturers' recommendation to ensure optimal performance.

(4) Negative air pressure must be maintained inside the building.

(5) Doors and windows must remain closed, except for the minimum time length needed to allow people to ingress or egress the building.

(6) An alternative odor control system is permitted if the special use applicant submits a report by a mechanical engineer licensed in the State of Michigan sufficiently demonstrating that the alternative system will eliminate odor as well or better than the air scrubbing and carbon filtration system otherwise required.

K.  The following minimum-distancing regulations apply:

(1) A marihuana establishment or medical marihuana facility may not be located within 5,280 feet of an existing public or private K-12 school; a church; a licensed daycare center; governmental office; or a public library. This distance is computed by measuring a straight line between the two closest points of the property lines on the subject parcels. Any marihuana establishment or medical marihuana facility that has received preliminary approval of a special land use by the effective date of this amendment shall be exempt from the 5,280 feet requirement. If the use has been abandoned for 12 months or more, then the special land use is invalid.

(2) A marihuana establishment or medical marihuana facility may not be on a parcel that abuts the R-1, R-2, Ag-R, or MR zoning districts.

(3) A marihuana establishment or medical marihuana facility may not be located within 5,280 feet of an existing one-family or multiple-family dwelling unless the owner of the dwelling completes an application for a waiver as part of the special land use process and records the waiver with the Berrien County Register of Deeds. This distance shall be measured from property line to property line. Any marihuana establishment or medical marihuana facility that has received preliminary approval of a special land use by the effective date of this amendment shall be exempt from the 5,280 feet requirement. If the use has been abandoned for 12 months or more, then the special land use is invalid.

L.  The following additional requirements apply to provisioning centers and retailers:

(1) Operational requirements.

(a) Provisioning centers and retailers may not be open to customers between the hours of 9:00 p.m. and 9:00 a.m.

(b) Provisioning centers and retailers may not receive deliveries between the hours of 8:00 p.m. and 7:00 a.m.

(c) The interior of the facility must be arranged in a way such that neither marihuana nor marihuana-infused products are visible from the exterior of the facility.

(d) Consumption of marihuana shall be prohibited in the retail facility, and a sign shall be posted on the premises of each retail center indicating that consumption is prohibited on the premises.

(e) Provisioning centers and retailers shall continuously monitor the entire premises on which they are operated with surveillance systems that include security cameras. The video recordings shall be maintained in a secure, off-site location for a minimum period of 14 days.

(f) Provisioning centers and retailers shall install, maintain, and consistently use a security alarm system that meets industry standards for building and inventory security.

(g) The public or common areas of the provisioning center or retailer must be separated from restricted or nonpublic areas.

(h) No drive-through window on the portion of the premises occupied by a provisioning center or retailer shall be permitted.

(i) Provisioning centers and retailers shall not allow the sale, consumption, or use of alcohol or tobacco products on the premises.

(2) Design requirements.

(a) Facades. Facades that face streets or connecting pedestrian frontage shall be subdivided and proportioned using features such as windows, entrances, arcades, arbors, or awnings along no less than 50% of the facade.

M. The following additional requirements apply to microbusinesses and Class A microbusinesses:

(1) Microbusinesses may not be open to customers between the hours of 9:00 p.m. and 9:00 a.m.

(2) Microbusinesses may not receive deliveries between the hours of 8:00 p.m. and 7:00 a.m.

(3) The exterior appearance of a microbusiness must be compatible with surrounding businesses with respect to facade type, ground-floor opacity, size and placement of signage, site layout, etc.

(4) The interior of the establishment must be arranged in a way such that neither marihuana nor marihuana-infused products are visible from the exterior of the establishment.

(5) Consumption of marihuana shall be prohibited in the establishment, and a sign shall be posted on the premises of each microbusiness indicating that consumption is prohibited on the premises.

(6) Microbusinesses shall continuously monitor the entire premises on which they are operated with surveillance systems that include security cameras. The video recordings shall be maintained in a secure, off-site location for a period of 14 days.

(7) Microbusinesses shall install, maintain, and consistently use a security alarm system that meets industry standards for building and inventory security.

(8) The public or common areas of the microbusiness establishment must be separated from restricted or nonpublic areas of the marihuana establishment.

(9) No drive-through window on the portion of the premises occupied by a microbusiness establishment shall be permitted.

(10) Microbusinesses shall not allow the sale, consumption, or use of alcohol or tobacco products on the premises.

(11) Cultivation must occur within an enclosed building with exterior facades consisting of opaque materials typical of an industrial or commercial building. The roof of the building may be constructed of a rigid transparent or translucent material designed to let in light, such as glass

or rigid polycarbonate or fiberglass panels. Films or other nonrigid materials cannot be used to construct any component of the building's exterior structure.

(12) Cultivation must be conducted in a manner to minimize adverse impacts on the Township's sanitary sewer system.

N.  The following additional requirements apply to growers:

(1) Cultivation must occur within an enclosed building with exterior facades consisting of opaque materials typical of an industrial or commercial building. The roof of the building may be constructed of a rigid transparent or translucent material designed to let in light, such as glass or rigid polycarbonate or fiberglass panels. Films or other nonrigid materials cannot be used to construct any component of the building's exterior structure.

(2) Cultivation must be conducted in a manner to minimize adverse impacts on the Township's sanitary sewer system.

O.  The following additional requirements apply to processors:

(1) Processing must be conducted in a manner to minimize adverse impacts on the Township's sanitary sewer system.

P.  The following additional requirements apply to safety compliance facilities:

(1) Operations must be conducted in a manner to minimize adverse impacts on the Township's sanitary sewer system.

Q.  Special use permit specific to applicant.

(1) Any special use permit granted for a medical marihuana facility or an adult-use establishment is unique and specific to the applicant and does not run with the land. The special use permit may be transferred to another medical marihuana facility only with Township approval.

R.  Violations; remedies; revocation. Notwithstanding any other provision in this Zoning Ordinance to the contrary, penalties for violations of this subsection shall be as follows:

(1) If at any time an establishment or facility violates the Zoning Ordinance, any condition imposed through a special use permit, or any other applicable Township ordinance or state law or regulation, the Township may take any or all of the following actions:

(a) The Township may request that LARA revoke or refrain from renewing the facility or establishment's state operating license.

(b) Following notice and a public hearing, the Township may revoke the facility or establishment's special use permit.

(c) The Township may treat the violation as a municipal civil infraction, for which each day the violation continues will be a separate offense, and impose the following fines:

[1] First violation: $500.

[2] Second offense: $2,500.

[3] Each subsequent offense: $5,000.

(d) The Township may seek other appropriate and proper remedies, including actions in law or equity.

[1]  Editor's Note: See MCLA § 333.27101 et seq.
[2]  Editor's Note: See MCLA § 333.27951 et seq.

# EXHIBIT D

Case 1:26-cv-01198    ECF No. 1-1,   PageID.44    Filed 04/13/26    Page 41 of 73

# Chapter 257. Marihuana

# Article I. Marihuana Establishments

[Adopted 4-17-2023 by Ord. No. 04172023B[1]]

[1]    Editor's Note: This ordinance also superseded former Article I, Marihuana Establishments, adopted 12-17-2018 by Ord. No. 20181217.

## § 257-1. Definitions.

The following words and phrases have the meanings ascribed to them when used in this article:

**CO-LOCATION or CO-LOCATED**
The siting and operation of a combination of multiple establishments or establishment types at a single location.

**DESIGNATED CONSUMPTION ESTABLISHMENT**
A commercial space that is licensed by LARA and authorized to permit adults 21 years of age and older to consume marihuana products at the location indicated on the state license.

**EQUIVALENT LICENSES**
Any of the following held by a single licensee:

A.   A marihuana grower license, of any class, issued under the act and a grower license, of any class, issued under the MMFLA.

B.   A marihuana processor license issued under the act and a processor license issued under the MMFLA.

C.   A marihuana retailer license issued under the act and a provisioning center license issued under the MMFLA.

D.   A marihuana secure transporter license issued under the act and a secure transporter license issued under the MMFLA.

E.   A marihuana safety compliance facility license issued under the act and a safety compliance facility license issued under the MMFLA.

**EXCESS MARIHUANA GROWER**
A license issued by LARA to a person holding five class C marihuana grower licenses and licensed to cultivate marihuana and sell or otherwise transfer marihuana to marihuana establishments.

**LARA**
The Department of Licensing and Regulatory Affairs and any successor department or agency within the department, including the Cannabis Regulatory Agency.

**LICENSEE**
A person holding a state operating license for a marihuana establishment.

**MARIHUANA**
All parts of the plant genus cannabis, growing or not; the seeds of that plant; the resin extracted from any part of the plant; and every compound, manufacture, salt, derivative, mixture, or

Case 1:26-cv-01198    ECF No. 1-1, PageID.45    Filed 04/13/26    Page 42 of 73

preparation of the plant or its seeds or resin. Marihuana does not include the mature stalks of the plant, fiber produced from the stalks, oil or cake made from the seeds of the plant, any other compound, manufacture, salt, derivative, mixture, or preparation of the mature stalks, except the resin extracted from those stalks, fiber, oil, or cake, or any sterilized seed of the plant that is incapable of germination. Marihuana does not include industrial hemp. Marihuana is also commonly known as "cannabis."

**MARIHUANA ESTABLISHMENT**

A marihuana grower, marihuana safety compliance establishment, marihuana processor, marihuana microbusiness, marihuana retailer, marihuana secure transporter, or any other type of marihuana-related business licensed by LARA under the MRTMA.

**MARIHUANA EVENT ORGANIZER**

A person licensed to apply for a temporary marihuana event license under the rules.

**MARIHUANA GROWER**

A person licensed by LARA to cultivate marihuana and sell or otherwise transfer marihuana to marihuana establishments.

**MARIHUANA MICROBUSINESS**

A person licensed by LARA to cultivate not more than 150 marihuana plants; process and package marihuana; and sell or otherwise transfer marihuana to individuals who are 21 years of age or older or to a marihuana safety compliance establishment, but not to other marihuana establishments.

**MARIHUANA PROCESSOR**

A person licensed by LARA to obtain marihuana from marihuana establishments; process and package marihuana; and sell or otherwise transfer marihuana to marihuana establishments.

**MARIHUANA RETAILER**

A person licensed by LARA to obtain marihuana from marihuana establishments and to sell or otherwise transfer marihuana to marihuana establishments and to individuals who are 21 years of age or older.

**MARIHUANA SECURE TRANSPORTER**

A person licensed by LARA to obtain marihuana from marihuana establishments in order to transport marihuana to marihuana establishments.

**MARIHUANA SAFETY COMPLIANCE ESTABLISHMENT**

A person licensed by LARA to test marihuana, including certification for potency and the presence of contaminants.

**MEDICAL MARIHUANA FACILITY**

A grower, processor, secure transporter, provisioning center, or safety compliance facility licensed by LARA under the MMFLA.

**MMMA**

The Michigan Medical Marihuana Act, Initiated Law 1 of 2008, as amended, MCL 333.26424 et seq.

**MMMFLA**

The Michigan Medical Marihuana Facilities Licensing Act, 2016 PA 281, as amended, MCL 333.27102 et seq.

**MRTMA**

The Michigan Regulation and Taxation of Marihuana Act, Initiated Law 1 of 2018, MCL 333.27951 et seq.

**PREQUALIFICATION STEP or PREQUALIFIED**

The portion of the application for a state operating license pertaining to the applicant's financial background and the criminal history of the applicant and other associated persons.

**RULES**

The administrative rules for adult-use marihuana establishments promulgated by LARA, as amended from time to time.

**STACKED GROWER LICENSE**

Case 1:26-cv-01198 ECF No. 1-1, PageID.46 Filed 04/13/26 Page 43 of 73

More than one state operating license issued to a single licensee to operate as a grower of class C (2,000 marihuana plants) as specified in each license at an establishment.

**STATE OPERATING LICENSE or, unless the context requires a different meaning, "license"**
A license that is issued by LARA under the MRTMA that allows the licensee to operate a marihuana establishment.

# § 257-2. Authorized facilities and establishments.

[Amended 1-21-2025 by Ord. No. 20250121]

A. Authorization and special land use permit required. No person shall operate a medical marihuana facility or a marihuana establishment in the Township without an authorization issued by the Township pursuant to the provisions of this section and a special use permit pursuant to this chapter and the Township Zoning Ordinance.

B. Number of and types of medical marihuana facilities and adult-use marihuana establishments eligible for authorization. As of the effective date of the ordinance amending this section, the Township prohibits medical marihuana facilities and adult-use marihuana establishments. This prohibition does not apply to:

(1) Medical marihuana facilities and adult-use marihuana establishments lawfully licensed by the Township as of the effective date of the ordinance amending this section;

(2) Medical marihuana facilities and adult-use marihuana establishments for which a complete application was received by the Township on or before March 18, 2024, if the facility or establishment subsequently receives all required approvals under the 2023 version of this chapter and the Township Zoning Ordinance and from LARA;

(3) The transfer of a license for an existing facility or establishment to a new licensee that intends to continue operating on the same parcel, subject to approval by the Township Board and LARA. The Township Board may require any information and documentation that it determines necessary to review the transfer request.

# § 257-3. General regulations.

A. Submission of supplementary information to the Township. Applicants for Township authorization and persons operating existing facilities or establishments in the Township must provide the Zoning Administrator with copies of all documents submitted to LARA in connection with the initial license application, subsequent renewal applications, or investigations conducted by LARA. The documents must be provided to the Zoning Administrator within 14 days of submission to LARA and may be submitted electronically to the Township unless otherwise requested by the Zoning Administrator.

B. Compliance with applicable laws and regulations. Medical marihuana facilities and adult-use marihuana establishments must be operated in compliance with the MMFLA, MRTMA, LARA Rules, all conditions of the establishment's state operating licenses, and all applicable Township ordinances, rules, regulations, and codes. Compliance with the foregoing does not create immunity from prosecution by federal authorities or other authorities of competent jurisdiction.

C. No consumption on premises. No smoking, inhalation, or other consumption of marihuana shall take place on or within the premises of any facility or establishment. It shall be a violation of this article to engage in such behavior or for a person to knowingly allow such behavior to occur. Evidence of all of the following gives rise to a rebuttable presumption that a person allowed the consumption of marihuana on or within a premises in violation of this section:

(1)  The person had control over the premises or the portion of the premises where the marihuana was consumed;

(2)  The person knew or reasonably should have known that the marihuana was consumed; and

(3)  The person failed to take corrective action.

D.  Annual fee. A licensee must pay an annual fee for each license used within the Township to help defray administrative and enforcement costs. The initial annual fee must be paid to the Zoning Administrator when the application for Township approval is submitted. In each subsequent year, fees are due on the date on which the licensee submits an application to LARA for renewal of the state operating license. The amount of the annual fee is to be established by resolution of the Township Board.

[1]  *Editor's Note: Former § 257-3, Application for authorization, and § 257-4, Relocation of facilities or establishments and transfers of licenses, were repealed 1-21-2025 by Ord. No. 20250121. This ordinance also redesignated former §§ 257-5 through 257-8 as §§ 257-3 through 257-6, respectively.*

## § 257-4. Violations and penalties.

[Amended 5-23-2025 by Ord. No. 20250523A]

A.  Request for revocation of state operating license. If at any time an authorized facility or establishment violates this article or any other applicable Township ordinance, the Township Board may request that LARA revoke or refrain from renewing the facility or establishment's state operating license.

B.  The Township may treat the violation as a municipal civil infraction, for which each day the violation continues will be a separate offense, and impose the following fines:

(1)  First violation: $2,500.

(2)  Second offense: $5,000.

(3)  Each subsequent offense: $10,000.

C.  Other remedies. The foregoing sanctions are in addition to the Township's right to seek other appropriate and proper remedies, including actions in law or equity.

## § 257-5. When effective.

This article is effective 30 days after publication.

## § 257-6. Repealer.

Any ordinance inconsistent with this article shall be repealed but only to the extent necessary to give this article full force and effect.

# EXHIBIT E

**NEW BUFFALO TOWNSHIP**
**ORDINANCE NO. 20260217**

**ORDINANCE AMENDING CHAPTER 257 OF THE TOWNSHIP CODE OF ORDINANCES**
**REGULATING MEDICAL MARIHUANA FACILITIES AND ADULT-USE MARIHUANA ESTABLISHMENTS**
**REGARDING LARA VIOLATIONS**

**NEW BUFFALO TOWNSHIP ORDAINS:**

**Section 1.      Purposes.**

The purposes of this amendment are (1) to require medical marihuana facilities and adult-use marihuana establishments to promptly notify the Township of any formal administrative complaints or disciplinary actions taken by LARA in connection with their facility or establishment located in the Township; and (2) to provide that medical marihuana facilities and adult-use marihuana establishments are not eligible for an outdoor assembly license for 12 months following LARA disciplinary action.

**Section 1.      Amendment of Section 257-3.**

Section 257-3(B) of the Township Code of Ordinances is amended to read as follows, with new text indicated in boldfaced font.

Compliance with applicable laws and regulations.

1.  Medical marihuana facilities and adult-use marihuana establishments must be operated in compliance with the MMFLA, MRTMA, LARA Rules, all conditions of the establishment's state operating licenses, and all applicable Township ordinances, rules, regulations, and codes. Compliance with the foregoing does not create immunity from prosecution by federal authorities or other authorities of competent jurisdiction.

2.  **A medical marihuana facility or adult-use marihuana establishment that is the subject of a formal administrative complaint or disciplinary action by LARA regarding its location in the Township must notify the Township Clerk and Zoning Administrator in writing within three business days after receiving notice from LARA of the complaint or disciplinary action. The notice must include a copy of the complaint or other communication from LARA concerning the violation and any order, consent order, or other document imposing discipline (including fines).**

3.  **A medical marihuana facility or adult-use marihuana establishment that is the subject of a formal administrative complaint or disciplinary action by LARA is not eligible for an outdoor assembly license under Chapter 101 of this Code of Ordinances (Sec. 101-1 through 101-12) for a period of 12 months following the date that LARA imposes its disciplinary action.**

**Section 3.      Effective Date.**

This Ordinance takes effect upon publication.

**Section 4.**     **Repeal.**

Any ordinance inconsistent with this Ordinance shall be repealed but only to the extent necessary to give this Ordinance full force and effect.

| | |
|---|---|
| YEAS | Anderson, Hannon, Heit, Iazzetto, Males |
| NAYS | None |
| ABSTAIN | None |
| ABSENT | None |

## CERTIFICATION

As the Township Clerk of the Township of New Buffalo, Berrien County, Michigan, I certify this is a true and complete copy of an ordinance adopted by the Township Board at a regular meeting held on February 17, 2026.

Date: February 17, 2026

_____
Township Supervisor

Date: February 17, 2026

_____
Township Clerk

Introduced:     February 17, 2026
Adopted:        February 17, 2026
Published:      February 19, 2026
Effective:      February 19, 2026

# EXHIBIT F

**NEW BUFFALO TOWNSHIP**

**POLICY GOVERNING REVOCATION OF SPECIAL USE PERMITS
FOR MEDICAL MARIHUANA FACILITIES AND ADULT-USE MARIHUANA
ESTABLISHMENTS**

### I.    PURPOSE AND INTENT

This Policy establishes standards and guidelines governing the revocation of a Special Use Permit ("SUP") issued to a medical marihuana facility or adult-use marihuana establishment operating within New Buffalo Township when the permit holder violates applicable state law, administrative rules of the Cannabis Regulatory Agency ("CRA"), Township ordinances, or conditions imposed as part of Special Use Permit approval.

The intent of this Policy is to:

A.  Ensure consistent and fair decision-making;
B.  Protect the public health, safety, and welfare of the Township;
C.  Preserve the Township's zoning and land use authority as authorized by applicable law; and
D.  Provide clear standards for findings supporting revocation of a Special Use Permit.

### II.    GROUNDS FOR REVOCATION

A Special Use Permit for a medical marihuana facility or adult-use marihuana establishment may be revoked upon a finding that the permit holder has engaged in one or more of the following:

A.  Violations of state law, including but not limited to the Michigan Medical Marihuana Facilities Licensing Act or the Michigan Regulation and Taxation of Marihuana Act;

B.  Violations of the Michigan Department of Licensing and Regulatory Affairs / Cannabis Regulatory Agency administrative rules, including violations documented through formal administrative complaints;

C.  Violations of conditions imposed as part of Special Use Permit approval, including operational, site-specific, or performance-based conditions;

D.  Violations of Township ordinances, including zoning, nuisance, building, or public safety regulations; or

E.  Conduct that endangers the public health, safety, or welfare.

## III.    REQUIRED FINDINGS SUPPORTING REVOCATION

In order to revoke a Special Use Permit, the Township Board shall adopt written findings of fact supported by competent, material, and substantial evidence, on each of the following matters (if applicable).

### A.  Nature, Severity, and Frequency of Violations

The Township Board shall evaluate whether violations are material, demonstrate a pattern of noncompliance, or are ongoing or unresolved.

### B.  Relationship of Violations to Zoning Approval

The Township Board shall consider whether violations undermine Special Use Permit conditions or affect compatibility with surrounding land uses.

### C.  Compliance History and Regulatory Standing

The Township Board shall consider the permit holder's regulatory compliance history, including state enforcement actions and licensure status.

### D.  Impact on Public Health, Safety, and Welfare

The Township Board shall evaluate whether violations create safety risks or adverse effects on neighboring properties.

### E.  Good Faith and Corrective Action

The Township Board shall consider the permit holder's corrective actions, responsiveness, and good faith efforts to address the violation or resolve any adverse effects.

### F.  Consistency With State Regulatory Determinations

The Township Board may consider alignment with Cannabis Regulatory Agency enforcement actions, but it is not required to impose the same discipline as the CRA.

### G.  Suitability of Continued Operation as a Special Land Use

The Township Board shall determine whether continued operation remains appropriate under all relevant circumstances.

## IV.    EVIDENCE SUPPORTING FINDINGS

The Township Board's findings may be supported by inspection reports, enforcement records, testimony, and other documentary evidence.

## V.    NOTICE AND HEARING

Prior to revocation, the permit holder shall receive written notice and an opportunity for a hearing before the Township Board.

## VI.    EFFECT OF REVOCATION

Upon revocation, the Special Use Permit shall be void, and continued operation shall constitute a zoning violation.

## VII.    CUMULATIVE REMEDIES

Revocation does not preclude the Township from pursuing additional legal or equitable remedies.

## VIII.    SEVERABILITY

If any provision of this Policy is held invalid, the remaining provisions shall remain in full force and effect.

# EXHIBIT G

Case 1:26-cv-01198    ECF No. 1-1,  PageID.56    Filed 04/13/26    Page 53 of 73

# Chapter 455. Zoning

# Article 6. Site Plan Review

# § 455-6.9. Expiration, revocation, and reapplication.

[Amended 5-23-2025 by Ord. No. 20250523A]

A.  Expiration. A site plan review approved under this article shall be valid for a period of one year from the date of approval. If the applicant fails to submit an application for a zoning permit to the Township for the approved site plan review in that time period, then the site plan review approval shall automatically expire. The applicant may request an extension of the permit by submitting a written request for consideration to the Planning Commission before the expiration date. The Planning Commission may grant an extension for a period of up to 24 months.

B.  Revocation. If a violation of any of the conditions or standards imposed on an approved site plan review is found to exist following inspection, the Zoning Administrator shall notify the owner of the premises, the applicant of the site plan review, and the Township Board that such violation exists and that the site plan review approval will be revoked within 15 days of such notification. If said violation is not corrected within 15 days, the Township Board may revoke the permit. A permit may be revoked upon any violation. Furthermore, such a violation is hereby declared a violation of this chapter, subject to all the remedies and penalties provided for within this chapter.

# EXHIBIT H

**NEW BUFFALO TOWNSHIP BOARD**
**REGULAR MEETING**
March 17th, 2025, at 4:00 P.M.
17425 Red Arrow Hwy. New Buffalo, MI 49117
**Minutes**

The meeting was called to order by Supervisor Heit at 4:00 p.m.

1. **ROLL CALL & PLEDGE OF ALLEGIANCE**

   Present:        Anderson, Hannon, Heit, & Males
   Not Present:    Iazzetto
   Pledge of Allegiance

2. **ITEMS TOO LATE FOR PRINTED AGENDA**

   - <u>Added to Consent Agenda</u>: Approve invoice from Nesci Landscapes in the amount of $5,000.00 for the purchase and installation of basketball hoops at Memorial Park.
   - <u>Added to Consent Agenda</u>: Approve quote from Tuscan Valley Landscaping in the amount of $1,390.00 for improvements to the parking lot at the Union Pier Trailhead.

3. **APPROVE AGENDA**
   Males moved, Heit supported, approving the agenda as amended.

   <u>Roll Call Vote</u>:

   | | |
   |---|---|
   | Anderson | Yes |
   | Hannon | Yes |
   | Heit | Yes |
   | Iazzetto | Absent |
   | Males | Yes |

   Motion        CARRIED

4. **REPORTS**

   Building
   Park
   Pine Grove Cemetery
   Galien River Sanitary District
   Fire
   Library
   LRSB
   Marina
   Pokagon Fund
   Police

5. **PUBLIC COMMENTS** – Public comments were heard by the board.

**6.    CONSENT AGENDA**

Heit moved, Hannon supported, approving the following items on the consent agenda:

Minutes of the February 18th regular meeting
Treasurer's Report
Bills

1.    General $614,720.03
2.    Public Safety Millage $415,900.42
3.    Park Millage $20,308.78
4.    Building $11,066.62
5.    LRSB Discretionary $62,994.90
6.    Sewer & Water $604,823.98
7.    Marina $704.50
8.    Payroll $80,037.66
9.    Trust & Agency $77.50

Approve hiring Emily Walters as a cadet for the fire department at cadet rate of pay, effective immediately pending background check and physical.

Approve Deputy Clerk Flick's Michigan Municipal Clerks Association membership fee of $100.00.

Approve Clerk Hannon and Deputy Clerk Flick attend the Michigan Municipal Clerks Association Summer Conference in the amount of $400.00 per person in registration fees and $434.70 per person for two nights of lodging, plus mileage and meals.

Approve a quote from Tuscan Valley Landscaping in the amount of $9,466.20 annually for the 2025 and 2026 seasons and $9946.21 for the 2027 season for mulch and seasonal maintenance of the Union Pier Trailhead and Red Arrow Hwy. planting areas and Memorial Park and Township Hall.

Approve quote from Tuscan Valley Landscaping in the amount of $1,460.60 for mulch and spring clean up at Fire Station 2.

Approve quote from Tuscan Valley Landscaping in the amount of $1,197.60 for mulch and spring clean up at Pleasure Isle Marina.

Approve invoice from Nesci Landscapes in the amount of $5,000.00 for the purchase and installation of basketball hoops at Memorial Park.

Approve quote from Tuscan Valley Landscaping in the amount of $1,390.00 for improvements to the parking lot at the Union Pier Trailhead.

Roll Call Vote:

| | |
|---|---|
| Anderson | Yes |
| Hannon | Yes |
| Heit | Yes |
| Iazzetto | Absent |

| Males | Yes |
|-------|-----|

Motion          CARRIED

## 7.    NEW BUSINESS

**a.    Short Term Rental Ordinance Amendment**

Hannon moved, Heit supported, adopting Resolution 20250317a which adopts Ordinance 20250317 to amend chapter 332 the township code regulating rental property to allow only 1 dwelling unit per parcel as a short-term rental.

Roll Call Vote:

| Anderson | Yes |
|----------|-----|
| Hannon | Yes |
| Heit | Yes |
| Iazzetto | Absent |
| Males | Yes |

RESOLUTION    ADOPTED

**b.    Planned Unit Development – Driftwood Union Pier LLC**

Heit moved, Hannon supported, approving a Planned Unit Development for Driftwood Union Pier LLC at Community Hall Rd, Union Pier, MI 49129 that will consist of 15 homes, a maintenance building, trash enclosure, pool with a structure for restrooms and mechanical room.

Roll Call Vote:

| Anderson | Yes |
|----------|-----|
| Hannon | Yes |
| Heit | Yes |
| Iazzetto | Absent |
| Males | Yes |

MOTION          CARRIED

**c.    Twin City Area Transportation Study Resolution**

Males moved, Anderson supported, adopting Resolution 20250317b which states that the township supports and formally requests inclusion in TwinCATS.

Roll Call Vote:

| Anderson | Yes |
|----------|-----|
| Hannon | Yes |
| Heit | Yes |
| Iazzetto | Absent |
| Males | Yes |

RESOLUTION    ADOPTED

d.    **Fines & Costs Resolution**
Hannon moved, Anderson supported, adopting Resolution 20250317c which amends the fines and costs schedule for civil fines and costs.

Roll Call Vote:

| | |
|---|---|
| Anderson | Yes |
| Hannon | Yes |
| Heit | Yes |
| Iazzetto | Absent |
| Males | Yes |

RESOLUTION    ADOPTED

e.    **Employee Wage Increases**
Heit moved, Hannon supported, approving a step increase of $0.50 per hour for Deputy Treasurer Sarah Rutkoskie effective March 23, 2025.

Motion        CARRIED

f.    **Public Safety Day School Supplies Grant**
Hannon moved, Heit supported, approving a grant application to the Pokagon Fund in the amount of $7,500 for school supplies at Public Safety Day.

Motion        CARRIED

g.    **Employee Handbook Amendment**
Males moved, Heit supported, approving the amended employee handbook as presented.

Motion        CARRIED

h.    **Fire Department Employee Handbook**
Males moved, Heit supported, approving the Fire Department ESTA policy as presented.

Motion        CARRIED

i.    **Hire Seasonal Employees**
Heit moved, Hannon supported, approving the of hiring Sam Wendel Suppa at a rate of pay of $16.00 per hour and Ethan Lijewski, Drew Bowen, and Vaugh Nikkel at a rate of pay of $15.50 per hour, as Park Department seasonal employees effective immediately.

Motion        CARRIED

j.    **Special Land Use Extension Approval – Peter Bobeck**
Hannon moved to grant a six-month extension of a preliminary approval of a Special Land Use to Peter Bobeck at 19563 US-12 until September 17th, 2025. The motion was not seconded and no vote was taken.

Hannon moved, Heit supported, granting a two-month extension of a preliminary approval of a Special Land Use to Peter Bobeck at 19563 US-12 until May 17th, 2025.

Roll Call Vote:

| | |
|---|---|
| Anderson | Yes |
| Hannon | Yes |
| Heit | Yes |
| Iazzetto | Absent |
| Males | Yes |

MOTION          CARRIED

k.  **Special Land Use Extension Approval – Stash Ventures**
Heit moved, Hannon supported, granting a six-month extension of a preliminary approval of a Special Land Use to Stash Ventures at 19818 M-239 until September 17th, 2025. No vote was taken on this motion.

Heit moved, Hannon supported, granting a two-month extension of a preliminary approval of a Special Land Use to Stash Ventures at 19818 M-239 from May 3, 2025, until July 3, 2025, with applicant to provide an in-person update at the July 2025 regular meeting of the New Buffalo Township Board.

Roll Call Vote:

| | |
|---|---|
| Anderson | Yes |
| Hannon | Yes |
| Heit | Yes |
| Iazzetto | Absent |
| Males | Yes |

MOTION          CARRIED

l.  **Outdoor Assembly Permit – Timber Cannabis Co.**
Hannon moved, Heit supported, approving an Outdoor Assembly Permit for Timber Cannabis at 19615 US-12, New Buffalo on April 4th & 5th from the hours of 9:00 am to 9:00 pm with the following conditions:

- Applicant will provide Health Dept. certificate of food trucks prior to event/or make available day of event for inspection.
- Fire Dept. will conduct fire code inspection the morning of the event of the outdoor area/site.

Motion          CARRIED

m. **Outdoor Assembly Permit – Flowerbowl**
Heit moved, Hannon supported, approving an Outdoor Assembly Permit for Flowerbowl New Buffalo at 10168 US-12, New Buffalo on April 20th from the hours of 9:00 am to 8:45 pm with the following conditions:

- Applicant will provide Health Dept. certificate of food trucks prior to event/or make available day of event for inspection.
- Limit one tent and 2 food trucks as outlined in agreed upon site plan, due to limited useable space.

Motion        CARRIED

n. **Outdoor Assembly Permit – Cannabis Club**
Males moved, Heit supported, approving an Outdoor Assembly Permit for Cannabis Club at 19650 M239, New Buffalo on April 19th and 20th from the hours of 9:00 am to 9:00 pm.

Motion        CARRIED

o. **Outdoor Assembly Permit – Trap Stars**
Heit moved, Hannon supported, approving an Outdoor Assembly Permit for Trap Stars at 13964 Grand Ave., New Buffalo on April 19th and 20th from the hours of 9:00 am to 9:00 pm with the following conditions:

- Applicant will provide Health Dept. certificate of food trucks prior to event/or make available day of event for inspection.
- Cannot use any portion of the building located at 13944 Grand Ave. All vendors can utilize space/parking lot in front of building.
- Employees directing traffic should wear reflective safety vest.
- Applicant will provide township with copy of parking agreement with landowner for use of lot for day of the event.
- Additional signage shall be posted throughout the event stating "No consumption on premise"
- No DJ allowed as pertinent information not provided.

Motion        CARRIED

p. **Special Land Use Approval – Patterson Processing LLC**
Heit moved, Hannon supported, granting final approval of a Special Land Use to Patterson Processing LLC to operate an Adult-Use Marihuana Retail Establishment at 19001 US 12, New Buffalo, Michigan 49117; being parcel number 11-13-0017-0014-07-6 with the following conditions:

The applicants must adhere to the standards detailed in the New Buffalo Township Zoning Ordinance Article 455-5.22 Marihuana Businesses.

Copy of license from the State of Michigan Cannabis Regulatory Agency will be provided yearly upon renewal.

$5,000 annual administrative fee to be provided to New Buffalo Township by the renewal date of the State of Michigan license.

Maintain current business license registration with the New Buffalo Township Building Department which includes an annual Fire Code Inspection of the premises.

The SLU development agreement and final site plan must be recorded with the Register of Deeds Office with evidence of recording submitted to New Buffalo Township within 45 days.

The SLU is attached to, and shall run with the land for which the permit is granted, and shall be binding upon, and ensure benefit of, all subsequent owners and all occupants of the subject land provided that the new occupant/owner provide proper application for Marihuana Establishment w/supplemental information required, applicable fee, and copy of their State of Michigan Cannabis Regulatory Agency license.

Roll Call Vote:

| | |
|---|---|
| Anderson | Yes |
| Hannon | Yes |
| Heit | Yes |
| Iazzetto | Absent |
| Males | Yes |

MOTION          CARRIED

q.   **Outdoor Assembly Permit – Dispo**
Hannon moved, Heit supported, approving an Outdoor Assembly Permit for Dispo at 19001 US 12, New Buffalo, on April 19th on April 20th from the hours of 9:00 am to 9:00 pm with the following conditions:

- Copy of Food Truck public health certificates to be provided prior to event, or available day of event
- Prior to event, applicant will install approximately 250-300 ft of temporary snow fencing between 18959 US 12 and 18995 US 12, preventing attendees from parking or utilizing the Public Safety Building parking lot for event.

Motion          CARRIED

r.   **Earth Day Challenge**
Males moved, Heit supported, approving the purchase of safety vests, not to exceed $1,000, for New Buffalo Township businesses that participate in the NBT Earth Day Challenge.

Motion          CARRIED

s.    **Pay Estimate #4 – Pajay Inc.**

Heit moved, Males supported, approving pay estimate #4 in the amount of $36,793.25 to Pajay Inc. for the US-12 water & sewer project.

Motion        CARRIED

8.    **BOARD COMMENTS**

- Midwest Energy Communications is on track to complete the installation of fiber by the third quarter of 2025. Work will begin soon in the Township.
- Township Hall will be connected to high-speed fiber during the week of March 24th.
- The bolts and brackets on the fence along the Marquette Greenway south of the City of New Buffalo have been replaced. Drainage has also been addressed. The ribbon cutting for the Marquette Greenway will take place on April 25th at 10:30 a.m.
- Regional Fire Authority talks continue to move forward.
- Township Hall will be closed to the public on Monday, March 31st and Tuesday, April 1st due to staffing shortages over spring break. Township Hall staff will be available via phone or email while Township Hall is closed to the public.
- The Friends of Berrien County Trails are hosting a fundraiser at Silver Beach Pizza in St. Joseph on March 26th. Some of the proceeds from this fundraiser will go the Marquette Greenway.
- Pine Grove Cemetery will be removing items from graves that were placed during the holidays after Easter. Removed items will be kept by the dumpster until after Memorial Day, when they will be discarded.

9.    **ADJOURNMENT**

Heit moved, Males supported, adjourning at 5:00 p.m.

Motion        CARRIED

Submitted By:

Michelle Hannon, Clerk
New Buffalo Township

# EXHIBIT I

**STATE OF MICHIGAN**
**DEPARTMENT OF LICENSING AND REGULATORY AFFAIRS**
**CANNABIS REGULATORY AGENCY**

**In the Matter of**

**PER III, LLC dba Trapstars Outlet**                    ENF No: 26-00042
**License No. AU-R-001306**
_____/

## FORMAL COMPLAINT

The Cannabis Regulatory Agency (CRA) by and through its attorney,

Assistant Attorney General Jeffrey W. Miller, files this formal complaint against

PER III, LLC (Respondent), alleging upon information and belief as follows:

1.     The CRA is authorized under the Michigan Regulation and Taxation of

Marihuana Act (MRTMA), MCL 333.27951 *et seq.*, to investigate alleged violations

of the MRTMA and administrative rules promulgated thereunder, take disciplinary

action to prevent such violations, and impose fines and other sanctions against

applicants and licensees that violate the MRTMA or administrative rules.

## FACTUAL ALLEGATIONS

2.     Respondent holds an active state license under the MRTMA to operate

an adult-use retailer business in the State of Michigan.

3.     Respondent operated at 13964 Grand Avenue, New Buffalo, Michigan

49117, at all times relevant to this complaint.

4.     Following an investigation, the CRA determined that Respondent

violated the MRTMA and/or administrative rules promulgated thereunder as set

forth below.

5.      On September 30, 2025, the CRA received a complaint alleging that Respondent was selling large quantities of marijuana products that may exceed the limits permitted by the administrative rules or statutes.

6.      On October 7, 2025, a CRA regulation agent (RA) conducted a review of the September 30th complaint and Respondent's sales receipts found in the statewide monitoring system (Metrc) from that same date.

7.      According to Metrc, Respondent had recorded 76 different sales of MuhaMeds disposable vape cartridges between 9:56 AM and 10:40 AM on September 30, 2025.  Each sales receipt showed a total cost of $.06 or $.07.  In total, 528 MuhaMeds vape cartridges were sold during this time.  These vape cartridges contained a combined total of 1,056 grams of marijuana concentrate.

8.      On October 8, 2025, the CRA RA conducted a site visit at Respondent's business.

9.      During this visit, the RA asked Respondent's general manager, A.J., to pull up information in Respondent's point-of-sale (POS) system that corresponded with the sales observed in Metrc for September 30, 2025.  Respondent could only provide one of the requested sales receipts and indicated they "lacked the knowledge with the task" regarding retrieving the remaining POS receipts.  At that time, the RA requested the 75 remaining POS receipts that corresponded with the September 30 sales in Metrc.

10.      The RA reviewed the one POS receipt that Respondent was able to provide.  POS receipt 140832044 corresponded with Metrc receipt 0221500318.  The

customer identified on the receipt was "bee h" and the budtender was listed as 88777. The receipt indicated that 7 marijuana vape cartridges were sold equaling a combined total of 14 grams of marijuana concentrate.

11.    The RA also reviewed video surveillance footage while onsite. The video for the time between 9:56 AM and 10:40 AM on September 30 did not confirm the sales of marijuana vape cartridges listed in Metrc for that same time period. Instead, the RA observed numerous customers on the sales floor purchasing primarily deli-style marijuana flower/bud. The RA was unable to confirm the sale documented in POS receipt 140832004 with the surveillance video.

12.    According to A.J., Respondent had a promotion for MuhaMeds vape cartridges on September 30, 2025. However, he did not provide any information corroborating this statement.

13.    The RA asked A.J. about Respondent's policy for promotions and inputting batch quantities of Metrc packages. A.J. stated that he was unsure of what occurred for the specific transactions from the relevant time period but indicated that Respondent works to "input all sales in real-time."

14.    Following his onsite visit, the RA emailed Respondent requesting surveillance footage from September 22 through September 26, 2025 (the time period related to the original complaint to the CRA) and for the time indicated on the 76 Metrc receipts. Additionally, the RA requested the POS sales receipts for the 76 sales transactions between 9:56 and 10:40 on September 30. Respondent's

3

standard operating procedures (SOP) relating to sales procedures and promotional sales including Metrc/POS package batching/uploading were also requested.

15.     On October 12, 2025, Respondent provided a table with the Metrc receipt number and corresponding POS receipt number, 37 of the 76 requested POS receipts, and an SOP pertaining to "Sales and Transactions – Multiple Transactions."

16.     The RA reviewed the POS receipts and the table provided by Respondent.  34 of the provided receipts contained the same customer ID (bee h) and the same budtender (88777).  These receipts amounted to sales of 237 vape cartridges equaling a total of 474 grams of marijuana concentrated product.

17.     The Metrc/POS receipt table provided by Respondent contained 37 total receipts.  However, 3 receipts did not contain MuhaMeds marijuana products. But the receipts contained various codes including "(FREE) 100% DISCOUNT" and "(FREE) 100% DISCOUNT open prot."

18.     Upon review of the provided SOP, the RA observed the SOP contained Respondent's policy for processing sales and transactions, including multiple transactions, for a single customer.  However, the SOP did not contain any information in the "Procedures" section pertaining to the listed items.  Without such information, the SOP failed to meet the requirements for a proper SOP.

19.     The RA again reviewed internal security surveillance video for September 30, 2025.  This video confirmed that there were no customers present on

4

the sales floor during the time associated with the receipts that purchased the quantity of marijuana vape cartridges the receipts indicated.

20.    On November 5, 2025, the RA requested Respondent provide the remaining 41 POS receipts for sales of the MuhaMeds vape cartridges.  The RA also requested that Respondent provide a statement regarding use of the POS receipt codes of "100 DISCOUNT" and whether the marijuana products in question were actually sold.

21.    Respondent's manager, A.J., indicated that all transactions occurred on camera between September 29 and September 30, 2025.  A.J. also indicated that the products left the facility as a matter of a promotional sale; specifically, when a customer purchased a set amount of product, they were given a promotional item for $0.01.  A.J. further stated that these items should have been reflected on each customer's receipts as a promotion during their purchase/transaction and not as sold prior to the product leaving the facility.  However, Respondent did not provide any evidence to support these statements.

22.    The CRA followed up with a request for A.J. to provide a statement indicating whether the licensee has different or additional POS receipts which reflect the marijuana products being investigated.  No additional information was provided by A.J. to support the transfer of these products as promotional products

23.    On November 7, 2025, Respondent provided the RA with a SOP titled "DISCOUNTING & PROMOTIONAL GIVEAWAYS."  The RA reviewed this SOP and found that it appeared to meet the requirements for an SOP.  However, based

5

on a review of the evidence and SOP, the RA determined that Respondent was not complying with their own SOP as written.

24.    The SOP for "DISCOUNTING & PROMOTIONAL GIVEAWAYS" states that the licensee must track all promotional items compliantly and a customer receipt must clearly show both items, the discount applied, and total paid. The SOP states to never "penny out" or "zero out" product without a corresponding sale. The sales receipts that the RA reviewed for the products at issue did not meet the standards required by Respondent's SOP.

25.    On November 13, 2025, Respondent provided the remaining requested POS receipts. The customer ID for 41 of the provided receipts, containing the MuhaMeds vape cartridges, was the same customer ID (bee h) and the same budtender (88777). The receipts indicated that 284 vape cartridges equaling 568 grams of marijuana concentrate product were sold.

26.    The Metrc receipts and the POS receipts contained a difference in sales cost of $0.01 for each receipt. A review of the POS receipts revealed this difference was due to a $0.01 charge on each reviewed POS receipt for "Excise Tax."

## COUNT 1

Respondent's actions as described above demonstrate a violation of Rule 420.104(3)(b), which states that a marijuana retailer must accurately enter all transactions, current inventory, and other information into the statewide monitoring system.

## COUNT 2

Respondent's actions as described above demonstrate a violation of Rule 420.206a(3), which states that a marijuana business must have up-to-date standard operating procedures on site that detail the business operations and activities necessary for them to comply with the acts and these rules.

6

THEREFORE, based on the above, the CRA gives notice of its intent to impose fines and/or other sanctions against Respondent's license, which may include suspension, revocation, restriction, and/or refusal to renew Respondent's license.

Under MCL 333.27957(1)(c) and Rule 420.704(2), any party aggrieved by an action of the CRA suspending, revoking, restricting, or refusing to renew a license, or imposing a fine, shall be given a hearing upon request.  A request for a hearing must be submitted to the CRA in writing within 21 days after service of this complaint.  Notice served by certified mail is considered complete on the business day following the date of the mailing.

Respondent also has the right to request a compliance conference under Rule 420.704(1) and R 420.808(4).  A compliance conference is an informal meeting at which Respondent has the opportunity to discuss the allegations in this complaint and demonstrate compliance under the MRTMA and/or the administrative rules.

Hearing and compliance conference requests must be submitted in writing by one of the following methods, with a copy provided to the Assistant Attorney General named below:

By Mail:          Department of Licensing & Regulatory Affairs
Cannabis Regulatory Agency
P.O. Box 30205
Lansing, Michigan 48909

In Person:       Department of Licensing & Regulatory Affairs
Cannabis Regulatory Agency
2407 North Grand River
Lansing, Michigan 48906

By Email:        CRA-LegalHearings@michigan.gov

If Respondent fails to timely respond to this formal complaint, a contested case hearing will be scheduled to resolve this matter.

Questions about this complaint should be directed to the undersigned Assistant Attorney General.

Respectfully submitted,

*/s/Jeffrey W. Miller*

Jeffrey W. Miller (P78786)
Assistant Attorney General
Attorneys for Cannabis Regulatory
    Agency
Licensing and Regulation Division
525 West Ottawa Street
P.O. Box 30758
Lansing, Michigan 48909
Telephone: (517) 335-7569
Fax: (517) 241-1997

Dated: February 19, 2026

LF: 2025-0446158-A/ Per III dba Trapstars, AU-R-001306, ENF 26-00042/ Formal Complaint/2026-02-19

# EXHIBIT J

